## ACTION UPON A GUARANTY OF PAYMENT FOR MERCHANDISE.

Circuit Court of Cuyahoga County.

### C. F. GUNTHER v. F. O. PFAFFMAN.

Decided, March 20, 1911.

*Guaranty of Credit—Acceptance—Payments by Debtor.*

1. No formal acceptance of a guaranty of credit to be extended to a third person is necessary to make it binding upon the guarantor.
2. In the absence of directions to that effect, one who guarantees any indebtedness incurred by a third party to plaintiff after a certain date, is not entitled to have payments thereafter made by the debtor to the plaintiff credited on the guaranteed items rather than on earlier items not guaranteed.

*M. B. & H. H. Johnson*, for plaintiff.
*R. H. Lee*, contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here are as they were in the court below. The plaintiff sued the defendant upon an account for goods sold and delivered by plaintiff to W. P. Chase Company, the payment for which goods, the plaintiff says, was guaranteed by the defendant. The case was tried to the court without a jury, by consent of parties. At the close of plaintiff's evidence the court sustained the motion of the defendant for judgment in his favor; plaintiff duly excepted.

If there is such guarantee it is found in letter of defendant to plaintiff, dated February 19, 1908, which reads:

"C. F. GUNTHER, Co.,
    Chicago, Ill.
"*Gentlemen*:
   "I have just received a letter from W. P. Chase & Co. of Los Angeles, in which they state that you are pressing them a little too hard for money and asking me to explain matters to you.
   "I called on this firm during the early part of January and was very favorably impressed by both Mr. Chase and Mr. Crane.

We have done business with them for a number of years and they always gave us good results for the same.

However, I will confess frankly that they impressed me as being honest, able and aggressive, but somewhat short on cash. In other words, they were long on brains but short on cash.

"I quickly realized that they would be able to accomplish wonders with the necessary amount of cash and I volunteered to back them. I will make this prophesy; that they will be the most prominent brokerage house in Southern California within the next year, and will have their choice of accounts from all over the United States, as they are running the brokerage business on correct and up-to-date lines. Any appreciation shown them at present will be amply rewarded in the near future.

"If there is any question in your mind regarding the possibility of losing money on them, I will go on record as guaranteeing you against any loss you may have in giving them credit. Furthermore, I will assure you that within the next 90 days they will be in a position to pay promptly for everything. Should you at any time become alarmed regarding their financial condition or think it good business to break off connections with them and want your money immediately, inform me and after I have them O. K. the amount, I will send you a check by return mail. There is not another concern in the United States whom I would guarantee in this manner. I am not casting any reflections on the honesty of any other concerns, but I wish to impress upon you the fact that when it comes to ability and integrity W. P. Chase & Co. stand out prominently on the Pacific Coast.

"Yours very truly,
"F. O. PFAFFMAN."

At the time the letter was written Chase & Co. were indebted to plaintiff in a considerable amount. After the letter was written the plaintiff sold goods in considerable amount. Payments were made from time to time by Chase & Co. to plaintiff on account, after receipt of this letter. The amount of such payments was in excess of the amount of goods sold, within the same time and was also in excess of the amount owing at the time the letter was written, but was less than the aggregate amount of the debt existing at the date of the letter and the sale made subsequent to such date, so that at the close of the business between the parties, there was remaining due to the plaintiff the sum of $986.64. This amount was admitted by the

counsel for the defendant, as appears at page 4 of the bill of exceptions.

The real questions arising in the case are:

Did the defendant give an absolute guarantee for payment of goods which plaintiff should furnish to Chase, after February 19th?

It not, did he give a conditional guarantee, the conditions of which have been complied with?

If either of the above is answered in the affirmative the question remains, is the defendant entitled to have payments made by Chase to plaintiff *after* February 19, 1908, credited upon the account accruing *after* the same date rather than upon indebtedness existing at that date.

The language of the letter taken as a whole seems clear that the defendant meant to do more than simply to express great confidence in Chase & Co. as urged on part of plaintiff in error. True, it does this and in strong language, before the fourth paragraph of the letter was reached; this paragraph reads: "If there is any question in your mind regarding the possibility of losing money on them I will go on record as guaranteeing you against any loss you may have in giving them credit." Then follows an assurance that they would be in condition to pay promptly within 90 days for everything. Certainly up to this point of the letter sufficient confidence in Chase & Co. had been expressed to satisfy anyone that defendant had full faith in that firm, and desired to impress that faith upon the plaintiff, but defendant was not content with this, he decided to go further and so added, as a new and additional sentence: "Should you at any time become alarmed regarding their financial condition, or think it good business to break off connections with them, and want your money immediately, inform me and after I have them O. K. the amount, I will send you check by return mail." If, after this language is used, there could be any doubt that defendant intended that this should be an absolute guarantee and should be so understood by plaintiff, it would seem to be settled by the next sentence which reads: "There is not another concern in the United States whom I would guarantee in this manner."

Surely he did not mean that this was not the only concern of which he would speak in high terms of praise, but for this firm he would go further and *guarantee* the payment for goods which they might purchase from the plaintiff.

That this was understood by the plaintiff to be a guarantee absolute, and that the defendant was so notified by him is evidenced by plaintiff's letter to defendant of February 24, 1908, which begins with these words:

"We have your letter dated February 19th, guaranteeing Mr. Chase and Chase's Brokerage account in Los Angeles for which we thank you."

If there was any necessity for acceptance of the guarantee in order to hold defendant, surely this letter with the continuing to sell goods to Chase & Co. was sufficient. Under the Ohio authorities, no formal acceptance is necessary. *Stearns' Suretyship,* Section 66; *Powers et al* v. *Berncratz,* 12 Ohio St., 273; *Birdsall* v. *Heacock,* 32 Ohio St., 177.

That the defendant understood this to be a guarantee is clearly evidenced by his letter to plaintiff of September 18th, 1908, in which he says:

"This replies to yours of the 16th inst. requesting me to pay certain bills of the W. P. Chase Co. of which I guaranteed the payment. I am surprised to note that it amounts to such a great amount. I will take the matter up with W. P. Chase Co. immediately, and have the account verified, and then I will take care of you. Kindly note, until further notice, I will not be responsible for any more of W. P. Chase Company's accounts."

Counsel for defendant in error urges very strenuously that contracts of guarantee, like all other contracts, must be construed so as to carry them out in accordance with the understandings of the parties, and cites numerous authorities in support of this proposition. What has already been said seems to establish that both the plaintiff and defendant understood this to be a guarantee, and we hold that it was.

If it be said that there was a condition to this guarantee that it should be operative only when plaintiff should become alarmed, "or think it good business to break off connections with Chase &

Co. and want his money immediately,'' this condition is surely met by the letter of September 16, 1908, written by plaintiff to defendant in which this is said:

"You stated in your guarantee, that at any time we were dissatisfied with the account, you would send us a check for same. Now we would appreciate it very much if you would attend to this at once, as we do not care to continue doing business with the W. P. Chase Company the way things have been running of late."

As already shown, defendant by letter of September 18, 1908, to plaintiff, said he would immediately take the matter up with Chase & Co., and have account "*verified*" and remit amount to the plaintiff. This suit was not brought until March 20th, 1909.

It does not appear that defendant did or did not learn from Chase & Co. whether the account was all right, but he admits at the trial, that it is, and as Chase & Co. notified plaintiff on October 9, 1908, that the account was correct to the amount of $884.59, as shown by letter of that date sent with statement to plaintiff, the defendant is not to be relieved because it is not affirmatively shown that he got direct notice from Chase & Co. before the trial, or before suit was brought that the account was O. K.

As to the application of payments made after the date of the letter of guaranty upon the prior indebtedness, as he did, the guarantor was not entitled to have them applied to the latter account in the absence of and direction to that effect being given to the plaintiff at the time the payments were made. *Birdsall* v. *Heacock*, 32 Ohio St., 177; *Gaston* v. *Barney*, 11 Ohio St., 506, and *Stearns' on Suretyship*, Section 96, and authorities there cited.

We come then to the conclusion that the court erred in dismissing the petition and the judgment is reversed as being contrary to law.